UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LOLITA MAE HOUSE,

        Plaintiff,                  DECISION & ORDER
                                              18-CV-6126-JWF

        v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____

## Preliminary Statement

Plaintiff Lolita Mae House ("plaintiff" or "House") brings this action pursuant to 42 U.S.C. § 1383(c)(3) seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for supplemental security income ("SSI"). See Complaint (Docket # 1). Presently before the Court are competing motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). See Docket ## 11, 14. For purposes of this Decision and Order, the Court assumes the parties' familiarity with the medical evidence, the ALJ's decision, and the standard of review, which requires that the Commissioner's decision be supported by substantial evidence. See Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir. 2007) (so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's

1

determination should not be disturbed), cert. denied, 551 U.S. 1132 (2007).

## Procedural History

Plaintiff filed her application for SSI on June 6, 2015, alleging a disability beginning on June 1, 2008. Administrative Record, Docket # 9 ("AR") at 151-56. Plaintiff's claim was initially denied on July 29, 2015. AR at 77. Plaintiff, her attorney, and vocational expert Carly Coughlin ("the VE") appeared before Administrative Law Judge Lisa Martin ("the ALJ") on November 9, 2016 for a video administrative hearing. See AR at 31-66. The ALJ issued an unfavorable decision on January 23, 2017. AR at 12-26. The Appeals Council denied plaintiff's request for review of the ALJ's decision on December 13, 2017. AR at 1-6. Plaintiff commenced this action on February 9, 2018 (Docket # 1) and filed her motion for judgment on the pleadings on October 9, 2018 (Docket # 11). The Commissioner filed its motion for judgment on the pleadings on December 10, 2018 (Docket # 14) and plaintiff replied on December 31, 2018 (Docket # 15).

## Discussion

<u>Residual Functional Capacity</u>: The ALJ found plaintiff to suffer from the following severe impairments: bilateral knee disorders with surgical correction, lumbar spine disorder, dissociative disorder, depression, anxiety disorder with post-traumatic stress disorder, personality disorder, and a history of

2

marijuana use. None of these impairments met or equaled a listed impairment. See AR at 17. The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work, except that plaintiff needed to be able to change positions every 30 minutes for one to two minutes. AR at 19. Plaintiff was further limited to occasionally climbing ramps and stairs, occasionally balancing, stooping, kneeling, crouching, crawling, and pushing/pulling with her lower extremities, and to routine, simple tasks requiring only occasional interactions with coworkers, supervisors, and the public. Id. The RFC also provided for plaintiff to use a cane as needed to walk and to be "off-task five percent of the workday due to mental distractions and pain." Id.

The Medical Record: Unlike many disability records, the record here contains detailed reports and specific disability-related opinions from plaintiff's treating primary care physician, Dr. C. Michael Henderson. Dr. Henderson, who is Board Certified in Internal Medicine, provided the ALJ with two separate medical source statements. The first statement was completed on July 15, 2015. AR at 573-78. Dr. Henderson opined that plaintiff would be unable to participate in activities except those related to her treatment for six months. AR at 574. He noted plaintiff suffered from "chronic back pain with sciatic as well as chronic left knee pain due to ligamental injury." Id. He reported plaintiff had a

3

pain score of nine out of ten when walking and that plaintiff was functionally impaired by these problems, as well as "multiple psychiatric issues, such as depression, bipolar disorder and anxiety disorder." Id. Dr. Henderson stated that plaintiff's gait and ability to squat was abnormal and that she was "very limited" in walking, standing, sitting, pushing, pulling, bending, and ability to lift/carry." (The term "very limited" was defined as able to be performed a maximum of one to two hours in an eight-hour work day.) Id. at 576.

Henderson's second assessment was completed on October 27, 2016. In a cover letter, Henderson informed the ALJ that he had been seeing plaintiff "once every two months" for over four years and that plaintiff continued to suffer from "back pain and left knee pain." AR at 535. Dr. Henderson diagnosed plaintiff with low back pain syndrome with her MRI demonstrating spondylosis, mild right and moderate left stenosis, and sciatica. Id. Dr. Henderson noted that plaintiff underwent an ACL repair and had left knee pain. Id. As to pain, Dr. Henderson found plaintiff "experiencing significant pain and distress" and that her "back pain and severe impairment [of her] left knee make employment extremely difficult due to the pain." Id. Attached to Dr. Henderson's cover letter was a comprehensive eight-page report that set forth in detail Dr. Henderson's findings and opinions on plaintiff's ability to do work related activities. Suffice it to

4

say, many of Dr. Henderson's findings and opinions were inconsistent with the RFC assigned to plaintiff by the ALJ. Dr. Henderson informed the ALJ that carrying and lifting aggravates plaintiff's back and knee pain (AR at 536), plaintiff could sit and stand no longer than one hour without interruption (AR at 537), that plaintiff was medically required to use a cane for "stabilization" (AR at 537), that plaintiff should never climb stairs or ramps, balance, stoop, kneel, crouch, or crawl (AR at 539), and that plaintiff should never be in an environment that exposes her to heights, moving mechanical parts, extreme heat or cold, dust, odors, humidity or wetness (AR at 540). As to plaintiff's pain levels, Dr. Henderson took the time to complete a Pain Limitation Questionnaire in which he opined that plaintiff's pain level was sufficient to "interfere with [plaintiff's] concentration, persistence or pace" and would "likely cause [her] to miss work at least two full days per month." AR at 543. Dr. Henderson stated that on a "bad day," plaintiff's pain would be "disabling" and negatively impact her productivity by at least 25 percent. Id. Dr. Henderson informed the ALJ that plaintiff's pain had an objective source that medically explains plaintiff's pain and that her pain was "likely to continue for at least 12 months." Id.

As noted above, the ALJ also determined plaintiff's non-exertional mental health impairments, including her dissociative

5

disorder, to be severe. Plaintiff told the ALJ that she will "just walk into a room and . . . just stare and stare and stare, just don't realize I'm doing it" (AR at 52) and has "become violent with a person sometimes . . . and I have no memory of doing these things." AR at 53. Plaintiff submitted four affidavits that corroborate her hearing testimony. Deborah Henry averred that she has known plaintiff for 25 years and has witnessed plaintiff having blackouts where she stares blankly into space for several minutes at a time. AR at 248. When plaintiff "comes out" of the blackouts Ms. Henry has to "explain to her what happened because she has no memory of them." Id. Plaintiff's cousin (Judi Hucks), daughter (Shy-Asia Sims), and fiancé (Marcus Walker) all submitted sworn affidavits describing plaintiff's erratic and sometimes violent behavior, stating that after angry outbursts plaintiff has no memory of her behavior. AR at 250-54. Many treatment notes from plaintiff's mental health provider Dr. Patricia Wyjad are in the record (AR at 405-33, 482-523) and informed the ALJ of plaintiff's dissociative episodes (AR at 420-425), depressed mood, and suicidal thoughts (AR at 425, 428, 489).

Treating Physician Rule: Plaintiff argues that the ALJ violated the treating physician rule by improperly discounting the opinion of Dr. Henderson. I agree. The treating physician rule, set forth in the Commissioner's own regulations, "mandates that the medical opinion of a claimant's treating physician is given

6

controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); see 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to medical opinions from your treating sources."). Where, as here, an ALJ gives a treating physician's opinion something less than "controlling weight," she must provide good reasons for doing so. Our circuit has consistently instructed that the failure to provide good reasons for not crediting the opinion of a plaintiff's treating physician is a ground for remand. See Schaal v. Apfel, 134 F.3d 496, 503-05 (2d Cir. 1998); see also Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) ("The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."); Halloran v. Barnhart, 362 F.3d 28, 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician['s] opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

Our circuit has also been blunt on what an ALJ must do when deciding not to give controlling weight to a treating physician:

> To override the opinion of the treating physician, we have held that the ALJ must explicitly consider, inter alia: (1) the frequency, length, nature, and extent of

7

treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist. After considering the above factors, the ALJ <u>must comprehensively set forth his reasons</u> for the weight assigned to a treating physician's opinion. The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand. The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion.

Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (emphasis added) (internal citations, quotations, and alterations omitted).

The foregoing pays tribute to the failure of the ALJ to follow either the letter or the spirit of the treating physician rule. As far as exertional limitations, the ALJ did not give deference to the board-certified physician who has engaged in the primary treatment of plaintiff for over four years. Instead, the ALJ gave Dr. Henderson's detailed findings and opinions only "some weight." AR at 24. This is permissible so long as the ALJ provides good reasons for doing so. The only "reasons" given by the ALJ for discounting the opinions of plaintiff's treating physician were (1) the medical record did not include treatment notes from Dr. Henderson and (2) perceived "inconsistencies" in Dr. Henderson's medical source statements. Neither represents a good reason sufficient to override the opinions of plaintiff's treating doctor.

8

As to treatment notes, it is true that there are limited treatment notes in the record from Dr. Henderson. But that fact alone does not represent a good reason to discount his otherwise detailed findings and opinions. "Lack of detail in treatment notes is not, standing alone, a good reason to reject a treating physician's opinion—instead, undetailed treatment notes create a gap, which the ALJ must then make reasonable efforts to fill." Dodds v. Berryhill, 1:15-CV-00228 (MAT), 2017 WL 4230500, at *3 (W.D.N.Y. Sept. 25, 2017) (internal quotation and citation omitted); see Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."); Webb v. Colvin, No. 12-CV-753S, 2013 WL 5347563, at *6 (W.D.N.Y. Sept. 23, 2013) (remanding where ALJ rejected treating source's opinion with ALJ's explanation that it "was not supported by treatment notes or the objective medical evidence of record." (internal quotation and citation to record omitted)); Correale-Englehart v. Astrue, 687 F. Supp. 2d 396, 428 (S.D.N.Y. 2010) ("If the ALJ is not able to fully credit a treating physician's opinion because the medical records from the physician are incomplete or do not contain detailed support for the opinions expressed, the ALJ is obligated to request such missing information from the physician.") (citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996)).

9

Similarly, the ALJ's decision to discount Dr. Henderson's opinion based on perceived inconsistencies in his medical source statements also fails to meet the "good reason" threshold. "[I]f an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly." Hartnett v. Apfel, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998); see Cabassa v. Astrue, No. 11-CV-1449 (KAM), 2012 WL 2202951, at *10 (E.D.N.Y. June 13, 2012) ("[I]f an ALJ believes that a treating physician's opinion lacks support or is internally inconsistent, he may not discredit the opinion on this basis but must affirmatively seek out clarifying information from the doctor."); Santiago v. Astrue, No. 11 Civ. 6873(BSJ)(AJP), 2012 WL 1899797, at *19 (S.D.N.Y. May 24, 2012)(remand required where ALJ did not ask treating physician "to explain the possible inconsistencies in his assessments."); Calzada v. Astrue, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) ("[I]f a physician's finding in a report is believed to be insufficiently explained, lacking in support, or inconsistent with the physician's other reports, the ALJ must seek clarification and additional information from the physician to fill any clear gaps before dismissing the doctor's opinion.").

Finally, although not specifically argued by plaintiff, the Court has concerns about the ALJ's analysis of plaintiff's non-

10

exertional limitations. Plaintiff has a fairly lengthy history of mental health treatment at the Genesee Mental Health Center. Records from that facility indicate depression, racing and obsessive thoughts, continuing dissociative episodes and hallucinations. Despite the diagnoses and findings in these treatment records, the ALJ assigned "great weight" to an opinion of a psychologist who met with the plaintiff on a single occasion for a consultative examination. AR at 23. In general, "ALJs should not rely heavily on the findings of consultative physicians after a single examination." Selian v. Astrue, 708 F.3d 409, 419 (2d Cir. 2013). This is because "consultative exams are often brief, are generally performed without [the] benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day." Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990); see also Giddings v. Astrue, 333 F. App'x 649, 652 (2d Cir. 2009) ("We also acknowledge that generally, 'in evaluating a claimant's disability, a consulting physician's opinions or report should be given little weight.'")(quoting Cruz, 912 F.2d at 13). The Second Circuit recently held that "[t]his concern is even more pronounced in the context of mental illness." Estrella v. Berryhill, 925 F.3d 90, 98 (2d Cir. 2019). Accordingly, on remand plaintiff's counsel should more fully develop the record as to plaintiff's mental health limitations.

## Conclusion

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Docket # 11) is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 14) is **denied,** and this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: Aug 6, 2019
Rochester, NY